Graham, Judge,
delivered the opinion of the court:
The facts in this case are fully set out in the findings. Briefly stated, the Government needed railroad connections and facilities for loading and unloading men and materials at the military camp in the neighborhood of Doming, New Mexico, known as Camp Cody. This camp was used in the prosecution of the war with Germany, but had been used on a smaller scale prior to that time. The land upon which it was constructed was under lease by the defendant from the railroad. The defendant needed railroad connections and facilities for loading and unloading men and materials at this camp, which was being enlarged and additional construction made. The representative of the defendant was one Major Charles Miller, constructing quartermaster in charge of the work on the ground. On or about August 1, 1917, the said constructing quartermaster expressed to the representative of the plaintiff his desire for and requested the construction of certain railroad tracks and facilities, a portion of which was on the railroad’s unencumbered right of way and a portion upon the leased land within the boundaries being used for the camp. This request was complied with and the necessary trackage, and facilities constructed, the details of which are set forth in the findings.
While Major Miller requested the construction of these tracks, he stated that he had no authority to arrange for payment for or enter into any agreement for the payment for the same and did not know what the attitude of the Government would be. in regard to payment.
Prior to the time that Major Miller preferred this request, namely, on the 15th day of June, 1917, an order was issued by The Adjutant General of the Army to the commanding general of the Southern Department, within which this camp was located, stating that the War Department’s attention had been directed to the fact that certain railroads were expecting to charge the Government for the cost of con *20 structing tbe railroad tracks and switches connecting suitable points on their lines with proposed camp sites and stating that it had been the custom of the railroads to extend their lines and switches free of cost to the Government in consideration of the profit to be derived from increased, traffic.
This order further stated that no authority had been given to anyone to offer or give compensation to the railroads for such work and directing the commanding general to notify the controlling officials of all railroads operating in his department that no authority had been given or would be given for payment for facilities in any case whatever. On June 14th the chairman of the special committee of national defense gave notice to all the railroads that a general plan had been adopted for the payment of trackage at military camps, by which the Government was to pay the expense of trackage outside of the railroad’s right of way, namely, within the camp site, the railroad to assume the expense of construction on railroad property; and later on, September 27, 1919, a proposed agreement was negotiated by the railroads, the Federal administration, and General Goethals and submitted to the Secretary of War, which, in substance, provided that the carrier was to pay for all construction and maintenance on the original right of way, not including temporary construction tracks built for handling-War Department construction material.
The claim sued upon here included the cost of construction of the trackage on the company’s right of way as well as that within the camp site. It, was presented to the War Department and heard by the War Claims Board transportation service, which board rejected the portion of the claim for trackage outside of the camp site, and allowed for that portion of it within the camp site, amounting to $4,040.32. The plaintiff appealed to the War Claims Board and that board affirmed this latter decision. Whereupon the plaintiff appealed to the Secretary of War, who affirmed the decision of the latter board allowing the plaintiff to recover for cost of construction of trackage within the camp.
The award thus made by the War Claims Board transportation service and affirmed by the War Claims Board *21 and approved by the Secretary of War, taken in connection with the notice to the railroads of the plan adopted by the special committee of national defense and the communications of the representative of the railroads to the Secretary of War, indicate that it was the policy and purpose of the Government to pay for railroad trackage constructed as it should order within the limits of camp sites. On the other hand, it is equally clearly indicated that it was not the Government’s purpose and intention to pay for trackage constructed outside of said camp sites on the railroad’s right of way and that there was no- authority to enter into any agreement for this latter construction. The foregoing is further borne out by the order from The Adjutant General’s office of June 15, 1917, recited in Finding IX, which distinctly indicates that no authority had been or would be given to obligate the Government to pay for constructing railroad tracks and switches connecting suitable points on the lines of the railroads with proposed camp sites. This arrangement of the Government paying for tracks and facilities constructed Avithin the camp sites, and the railroad paying for tracks and facilities constructed on its own right of way connecting its road with the camp site, seems to have been the understanding of the railroads as well as the Government.
Judgment should be entered in favor of the plaintiff in the sum of $4,040.32, and it is so ordered.
Hay, Judge; DowNey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.